UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CHAD McCLURE,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

No. CV-06-0293-CI

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 13, 16.) Attorney Maureen Rosette represents Plaintiff; Special Assistant United States Attorney Jeffrey Baird represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment, and remands the matter to the Commissioner for additional proceedings.

**JURISDICTION**

On September 19, 2003, Plaintiff Chad L. McClure (Plaintiff) applied for Disability Insurance benefits and Social Security Income (SSI) benefits. (Tr. 67, 485.) Plaintiff alleged disability due to bipolar depression, arthritis, neck and back pain, shoulder injury,

insomnia, asthma, and migraines, with an onset date of January 20, 2002. (Tr. 119, 485.) Benefits were denied initially and on reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ R. J. Payne on May 9, 2006. (Tr. 503-42.) Plaintiff, who was represented by counsel, and medical expert Allen D. Bostwick, Ph.D., testified. The ALJ denied benefits and the Appeals Council denied review. (Tr. 7-9.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. Plaintiff was 33 years old at the time of the hearing. He was single, without children. He had a high-school degree and a Bachelor of Arts degree from Eastern Washington University. (Tr. 515.) He testified he had past work experience as a landscape laborer, maintenance laborer and grocery stocker. (Tr. 516, 521.) He also reported work as a busboy, server, cashier, clerk, and delivery truck driver. (Tr. 104.) He stated he could no longer work due to mental and physical pain, arthritis and a concern that he was losing his sanity. (Tr. 522-23.) He testified he had panic attacks everyday, even though he was on medication. (Tr. 525-26.) He stated he could sit 20 minutes, stand a couple of minutes and walk six blocks to the store and back; bending caused "excruciating" pain. (Tr. 530-533.) He reported his activities of daily living consisted of watching television, reading, and minimal cooking. He stated he did not clean house and did laundry once every two months. (Tr. 537-38,

541.) He testified he was estranged from family and had few friends at the time of the hearing. (Tr. 523.)

**ADMINISTRATIVE DECISION**

At step one, ALJ Payne found Plaintiff had not engaged in substantial gainful activity during the relevant time. (Tr. 20.) At step two, he found Plaintiff had severe impairments of substance abuse/dependency disorders for alcohol and cannabis (at least through December 2003), affective disorder (schizoaffective), and anxiety-related disorder, NOS. (Id., Finding 3.) Considering the evidence without the effects of substance abuse at step two, the ALJ found "the remaining limitations [without the effects of substance abuse] would cause more than a minimal impact on the claimant's ability to perform basic work activities, and the claimant would continue to have a severe impairment or combination of impairments." (Tr. 22, Finding 5.) At step three, he found "other than Section Listing 12.09 for substance abuse disorders," the claimant did not have a medical condition which alone or in combination, met or medically equaled an administratively recognized level impairment listed in Appendix 1, Subpart P, Regulations No. 4 (Listings). (Tr. 22, Finding 4.)

At step four, the ALJ determined that, with the effects of substance abuse disorders, Plaintiff had the residual functional capacity (RFC) for work at the medium exertional level, subject to the following "moderate" social functional limitations: "interacting with the general public; getting along with co-workers without distraction or exhibiting behavior extremes; and maintaining socially appropriate behavior and basic standards of

neatness/cleanliness." (Tr. 22, Finding 6.) The ALJ did not make RFC findings absent the effects of substance abuse. He found Plaintiff's allegations not entirely credible. (Tr. 23.)

Finding Plaintiff's past work as a laborer, restaurant busboy, janitor, cashier, cook and delivery driver required only "limited" interaction with others "including the public co-workers and supervisors," the ALJ determined Plaintiff could perform his past work. (Id.) The ALJ proceeded, in the alternative, to step five. He found Plaintiff's "non-exertional social limitations have little or no effect" on Plaintiff's occupational base of unskilled medium work. (Tr. 24.) Applying the Medical-Vocational Guidelines (Grids), he found there were a significant number of jobs in the national economy that Plaintiff could perform; therefore, Plaintiff was not found "disabled," as defined by the Social Security Act. (Tr. 24.)

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

> Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

**SEQUENTIAL PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180

F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred when he (1) failed to provide specific and legitimate reasons for rejecting examining physician opinions (Ct. Rec. 14 at 8), and (2) improperly relied on the non-examining medical expert's opinion. (Id. at 9).

**DISCUSSION**

**A. Two-Step Sequential Evaluation in the Context of Substance Abuse**

Where drug and/or alcohol abuse (DAA) is a consideration during disability proceedings, the Regulations implemented by the Commissioner require the ALJ to follow a specific two-step analysis. 20 C.F.R. § 404.1535(a), 416.935(a). First, the ALJ must conduct the five-step sequential evaluation without attempting to determine the impact of DAA. If the ALJ finds that the claimant is not disabled under the five-step inquiry, the claimant is not entitled

to benefits, and there is no need to proceed with further analysis. Id. If the ALJ finds that claimant is disabled, and there is evidence that DAA is a contributing factor material to disability, the ALJ should proceed under the sequential evaluation and § 404.1535 or 416.935 to determine if the claimant would still be disabled if he stopped using drugs and alcohol. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).

Here, at step three, the ALJ found that "other than Section Listing 12.09 for substance abuse disorders," Plaintiff did not meet the Listings. This is construed as a finding that Plaintiff met Listing 12.09.[1] (Tr. 22.) However, Listing 12.09 can only be met if at least one of the referenced Listings is met (*e.g.,* sections 12.04, 12.06 or 12.08). *See supra* n.1. Because the ALJ did not identify which referenced Listing was met, the ALJ's step three

---

[1] Pursuant to Section 12.09, disabling substance addiction disorders are evidenced by:

> Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system.
>
> The required level of severity for these disorders is met when the requirements in any one of the following (A through I) are satisfied.
>
> A. Organic mental disorders. Evaluate under 12.02.
> B. Depressive disorders. Evaluate under 12.04.
> C. Anxiety disorders. Evaluate under 12.06.
> D. Personality disorders. Evaluate under 12.08.
> E. Eperipheral neuropathies. Evaluate under 11.14.
> F. Liver damage. Evaluate under 5.05.
> G. Gastritis. Evaluate under 5.04.
> H. Pancreatitis. Evaluate under 5.08
> I. Seizures. Evaluate under 11.02 or 11.03.

20 C.F.R. Part 404, Subpart P, App. 1, Section 12.09. (Emphasis added.)

finding is incomplete. Furthermore, even if this omission were found "harmless error," and the ALJ's finding that with the effects of DAA, Plaintiff met the Listings for sections 12.09, 12.04 and 12.06 (as supported by Dr. Bostwick's testimony (Tr. 474) and other evidence in the record (Tr. 342, 228, 466)), a determination of "disabled" would necessarily follow. 20 C.F.R. §§ 404.1525, 416.925 (Appendix 1 lists impairments severe enough to prevent an individual from performing substantial gainful activity). The ALJ erred when he failed to find the Plaintiff "disabled" with the effects of substance abuse.

When a claimant is ineligible for benefits because DAA is a contributing factor material to his disability determination, the ALJ then must conduct a second sequential analysis without the effects of DAA. *Bustamante,* 262 F.3d at 955 (a finding of disability is a condition precedent to an application of 20 C.F.R. §§ 404.1535 and 416.935). Here, after finding, albeit incompletely, that Plaintiff met a Listing (and was therefore disabled), the ALJ found: "[B]ased on all of the impairments, <u>including the substance use disorder(s)</u>, the claimant has the residual functional capacity for work at the medium exertional level." (Tr. 22.) (Emphasis added.) This finding is inconsistent with the ALJ's previous finding that Plaintiff met Listing 12.09 (*i.e.,* was unable to perform substantial gainful activity). Further, having found Plaintiff was disabled, the ALJ failed to make required RFC findings without the effects of substance abuse disorders, as required by *Bustamante*.

In sum, the ALJ's decision does not reflect the Commissioner's regulations outlining sequential evaluation in a disability

determination proceeding where substance abuse disorders are severe impairments. Because of additional legal errors in the sequential evaluation, discussed below, the DAA analysis cannot be considered an error of "opinion writing" rather than law. *See Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003). These legal errors require reversal and remand for a complete and accurate two-step sequential evaluation, with and without the effects of substance abuse, required by *Bustamante,* 20 C.F.R. §§ 404.1535, 416.935, and 20 C.F.R. Part 404, Subpart P, App. 1, Section 12.09.

**B. Credibility**

The ALJ found Plaintiff's allegations concerning the effects of his symptoms were not entirely credible. (Tr. 23.) A credibility determination must be supported by findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc). The ALJ may consider a claimant's reputation for truthfulness, inconsistencies either in testimony or between his testimony and conduct, his daily activities, work record, and testimony from physicians and third parties concerning the alleged symptoms. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). If there is no affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony regarding the severity of symptoms. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). An independent review of the record by the court indicates the ALJ's findings are not "clear and convincing." Plaintiff's ability to follow up with medication management and

unspecified reports of stability during the relevant period are not legitimate reasons to discount a claimant’s credibility. (Tr. 23.) On remand, the ALJ shall make new credibility findings. *See Thomas v. Barnhart*, 278 F.3d 945, 958 (9th Cir. 2002).

**C. Medical Opinions**

Plaintiff argues the ALJ improperly rejected the medical opinions of his examining physicians. In disability proceedings, a treating or examining physician’s opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004). If a treating or examining physician's opinion is not contradicted, it can be rejected only with “clear and convincing” reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Services*, 44 F.3d 1453, 1463 (9th Cir. 1995).

In addition to medical reports in the record, the analysis and opinion of a non-examining medical expert selected by the ALJ may be helpful in his adjudication. *Andrews,* 53 F.3d at 1041. Testimony of a medical expert may serve as substantial evidence only when supported by other evidence in the record. *Id.*

Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints, as specific, legitimate reasons for disregarding an examining physician's opinion. *See Flaten*, 44 F.3d at 1463-64; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

The record includes medical opinions from several acceptable medical sources: examining physicians Debra Brown, Ph.D., Kimberly Dorin, Ph.D., Pat Jarvis, M.D., and Shoshanna Press, M.D., all of whom rendered opinions on the severity of Plaintiff's mental disorder. (Tr. 223, 261, 265, 367.) Although Dr. Jarvis diagnosed alcohol and cannabis abuse, he specifically opined the alcohol and marijuana use "do not appear to create appreciable limitations." (Tr. 227.) He found mild to moderate limitations "with respect to employment." (Id.) Drs. Dorin and Press assessed Plaintiff when he was actively abusing alcohol and marijuana (Tr. 264, 267-68, 280); therefore, their opinions regarding Plaintiff's limitations would not apply to the ALJ's second step analysis, without the effects of alcohol.

In August 2005, Debra Brown, Ph.D., examined Plaintiff and administered objective testing. The results showed no evidence of malingering. Dr. Brown noted symptoms of bipolar disorder, panic and paranoia. (Tr. 374.) She did not note substance abuse as a problem. Plaintiff reported to Dr. Brown that he had not had a problem for years. (Tr. 372.) This evidence is consistent with the ALJ's finding that the effects of DAA were most significant up to December 2003. (Tr. 20, 21.) Dr. Brown concluded Plaintiff was not employable at the time, and had marked limitations in his ability to exercise judgment and make decisions, perform routine tasks, relate appropriately to co-workers and supervisors, interact appropriately in public contacts, and respond appropriately and tolerate the pressures of a normal work setting. (Tr. 369, 374.) She also stated his paranoia may make it difficult for him to receive treatment. (Tr. 374.)

In evaluating Dr. Brown's opinions, the ALJ stated only that, at that time "even when [Plaintiff] was not taking his medication, he was stable and able to interact with others as evidenced by his ability to continue following–up, and the seeking of medical care for other ailments." (Id.) He did not specifically reject Dr. Brown's opinions that Plaintiff had marked cognitive and social functional limitations. Plaintiff's ability to follow-up with appropriate medical care is not inconsistent with his diagnosed impairments and, therefore, not a specific and legitimate reason to disregard or reject Dr. Brown's opinions. *See Flaten*, 44 F.3d at 1463-64.

Referencing Family Services Spokane treatment notes by Michael Dobler, MSW, from this time period, the ALJ also concluded Plaintiff was "much improved, with good mood and insight, and logical progressive thoughts." (Tr. 21, 388.) Observations by a mental health counselor, who counseled Plaintiff for about one month on family of origin issues, are not sufficiently "clear and convincing" reasons to reject an examining psychologist's opinion. *See Lester*, 81 F.3d at 830.

In addition to the medical opinions in the record, the ALJ must consider observations by other sources as to "how an impairment affects a claimant's ability to work." *Sprague*, 812 F.2d at 1232. If rejected, the ALJ must give specific reasons germane to each witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The opinions of Donna Poole, ARNP, (Tr. 218-19) and Barbara Tritt, PA-C, (Tr. 365) that Plaintiff's impairments significantly interfered with his ability to work are considered "other source" opinions under the Regulations. 20 C.F.R. § 404.1513(d). Nurse Poole counseled

Plaintiff from October 2001 to September 2002, and was thus able to observe Plaintiff over a significant period of time. She noted that Plaintiff was using drugs and alcohol to self-medicate his mood disorder, and in her opinion, the substance abuse did not exacerbate his mental problems. She also observed, as his depression was being treated, signs and symptoms of social phobia were emerging. (Tr. 219.) The ALJ did not address specifically Nurse Poole's observations or those of Barbara Tritt, PA-C, who reported in August 2005, that Plaintiff's psychological problems were significantly interfering with ability to his functioning in society. (Tr. 424, 427.)

On remand, the ALJ must explain what weight, if any, he gave to the opinions of each examining medical source and other source in his two-step analysis, with and without the effects of DAA, and give legally sufficient reasons for discounting opinion evidence. Further, if the ALJ relies on medical expert advice, he must explain which other medical evidence in the record supports the non-examining, medical expert opinions. *See Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989)

**D. Step Four - RFC Findings and Past Relevant Work**

At step four, the Commissioner makes RFC findings, and determines if a claimant can perform past relevant work. Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. *SSR* 82-62. This is done by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920 (a)(4)(iv). Past relevant work is

work performed in the last 15 years, lasted long enough to learn it and was substantial gainful employment. *SSR* 82-61. In finding that an individual has the capacity to perform a past relevant job, the decision must contain among the findings the following specific findings of fact:

1. A finding of fact as to the individual's residual functional capacity;[2]

2. A finding of fact as to the physical and mental demands of the past job/occupation; and

3. A finding of fact that the individual's residual functional capacity would permit a return to his or her past job or occupation. *SSR* 82-62.

These findings must be based on the evidence in the record and must be developed and fully explained in the disability decision. Evidence of the physical and mental requirements of a particular job may be found in the DICTIONARY OF OCCUPATIONAL TITLES (DICOT), other administratively recognized publications, or vocational expert testimony. *SSR* 82-61. Vocational experts are used most often at an ALJ hearing. *SSR* 00-4p. Step four requires specific findings on all three points sufficient "to insure that the claimant really can perform his past relevant work." *Pinto v. Massanari,* 249 F.3d 840, 845 (9th Cir. 2001); *see also SSR* 00-40.

---

[2] On remand, if the ALJ in his first analysis of Plaintiff's impairments, <u>with the effects of DAA</u>, determines that Plaintiff is disabled, (*i.e.,* meets Listing 12.09 and a referenced Listing), the step four findings will be necessarily <u>without the effects of DAA</u>. *See Bustamante*, 262 F.3d at 955.

***1. RFC Findings***

The ALJ found:

> After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, <u>including the substance use disorders(s)</u>, the claimant has the residual functional capacity for work at the medium exertional level, subject to the following "moderate" social functional limitations for: interacting with the general public; getting along with co-workers without distraction or exhibiting behavior extremes; and maintaining socially appropriate behavior and basic standards of neatness/ cleanliness.

(Tr. 22, Finding 6.) (Emphasis added.)

As discussed above, this RFC finding with the effects of substance abuse disorders, which the ALJ initially found disabling (Tr. 22), contradicts a finding of disability and is unnecessary. What the Commissioner's regulations require is a fully-explained RFC determination without the effects of substance abuse so the ALJ may make adequate step four findings regarding Plaintiff's ability to do past relevant work or other work. Where, as here, DAA has been found a contributing factor material to Plaintiff's disability (Tr. 21), and there are no RFC findings absent the effects of alcohol, the ALJ's step four analysis is incomplete and erroneous. 20 C.F.R. §§ 404.1520, .1535, 416.920, .935; *SSR* 82-62.

***2. Past Relevant Work***

At step four, the ALJ found, "[e]ven with his ["moderate"]social functioning limitations, the claimant could still return to and perform any one of his past work activities, as interaction with others including the public, co-workers and supervisors, is limited." (Tr. 23.) The ALJ did not provide a detailed explanation of the physical and mental demands of

Plaintiff's past jobs as a landscape laborer, restaurant busboy, janitor, cashier, cook or delivery driver to support his finding that Plaintiff could still perform all of these jobs. *Pinto*, 249 F.3d at 845. Further, the evidence in the record does not support this determination. Medical professionals Donna Poole and Barbara Tritt observed Plaintiff's mental health issues were interfering with his ability to work. (Tr. 219, 424.) More significantly, Dr. Brown found Plaintiff's psychological impairments made him unemployable. (Tr. 369, 374.) These opinions do not support the ALJ's conclusory finding that Plaintiff could perform his past work in spite of his severe mental impairments. Further, the ALJ's conclusion that Plaintiff's past jobs required limited interaction with others, including the public, without reference to the DICOT or vocational expert testimony is unsupported by substantial evidence in the record and requires remand.

**E. Step Five - Use of the Medical Vocational Guidelines**

It appears the ALJ proceeded to step five and made alternative step five findings by applying the Medical-Vocational Guidelines (Grids). (Tr. 24.) At step five, the burden shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). The Grids were adopted by the Commissioner to improve the efficiency and uniformity of Social Security benefits proceedings. *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Their use was upheld as valid in *Heckler v. Campbell,* 461 U.S. 458 (1983). The use of the Grids is appropriate where "a claimant's functional

limitations fall into a standardized pattern accurately and completely described by the Grids." *Tackett,* 180 F.3d at 1103 (*citing Desrosiers*, 846 F.2d at 577). "Significant non-exertional impairments make reliance on the Grids inappropriate." *Desrosiers*, 846 F.2d at 577. Non-exertional limitations are those that do not depend on an individual's physical strength, such as mental, sensory, manipulative and environmental limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.7 (9th Cir. 1989). Where non-exertional limitations exist, "the ALJ must examine independently the additional adverse consequences resulting from the nonexertionary impairment." *Id.* at 1156. The Grids then are used as a "framework," because alone, the Grids do not fully describe the claimant's abilities and limitations. *Tackett*, 180 F.3d at 1102; *SSR* 86-8. If the limitation is slight, use of the Grids is appropriate. *Id.*

Here, the ALJ concluded that application of the Grids was appropriate after finding Plaintiff's non-exertional social limitations "have little or no effect on the occupational base." (Tr. 24.) This finding, without further explanation, is inconsistent with the ALJ's earlier finding that "[i]f claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on [his] ability to perform basic work activities." (Tr. 22, Finding 5.) Further, by definition, limitations caused by Plaintiff's "severe" mental impairments are non-exertional. *SSR* 85-15. ("Mental impairments are generally considered to be non-exertional, but depressions and conversion disorders may limit exertion.") Since Dr. Brown found "marked" limitations in Plaintiff's social functioning due to mental

impairments and without the effects of substance abuse, and this opinion was not properly rejected, a finding of "little or no effect" on the occupational base is unsupported by the evidence. The use of the Grids alone was not appropriate. Rather, the ALJ must make an individualized examination of Plaintiff's ability to work, based on a new RFC without the effects of substance abuse, and vocational expert testimony as to the jobs available and Plaintiff's suitability for each job identified.

Without vocational expert testimony regarding job classification and availability, the demands of identified jobs, and the effects of all Plaintiff's non-exertional mental limitations on his ability to perform identified jobs, there is not substantial evidence to meet the Commissioner's burden of proof at step five. *See Tackett*, 180 F.3d at 1103*; SSR* 85-15. The ALJ's failure to use the services of a vocational expert to assess the effects of Plaintiff's non-exertional limitations on his occupational base at step five is reversible error.

**CONCLUSION**

The Commissioner's sequential evaluation in the context of substance abuse is error. The determination that Plaintiff is not disabled is not supported by substantial evidence and is based on legal error. On remand, vocational expert testimony and additional findings are necessary to determine the issue of disability. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13 )** is **GRANTED** and the matter is remanded to the Commissioner for additional proceedings consistent with the decision above and

pursuant to sentence four of 42 U.S.C. § 405(g);

2. Defendant’s Motion for Summary Judgment **(Ct. Rec. 16)** is **DENIED;**

3. Application for attorney’s fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **PLAINTIFF** and the file shall be **CLOSED.**

DATED May 16, 2007.

S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE